**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OMS NATIONAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BARBARA RABA,<br><br>Defendant. | Case No. 1:23-cv-2050 |

**MOTION TO QUASH (OR MODIFY) A SUBPOENA**

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 45(d)(3)(A), OMS National Insurance Company ("OMSNIC"), respectfully makes this Motion to Quash (or Modify) a Subpoena Pursuant to Fed. R. Civ. P. 30(b)(6) for Deposition of Corporate Representative(s) (the "Subpoena"), which was issued in an action in the District of South Dakota, captioned, *Barbara Raba v. Jared E. Dye*, DMD, Case No. 4:21-cv-04192-KES (the "Raba Action"), and served on OMSNIC by Plaintiff Barbara Raba.

The Subpoena orders OMSNIC, a nonparty to the Raba Action (which issued an insurance policy to the Defendant), to designate a Rule 30(b)(6) witness to appear within this District, at Schaumburg, Illinois, and testify concerning whether OMSNIC has any record of any conversations with Defendant regarding certain matters that: (i) are beyond the scope of Rule 26 discovery as they are not relevant to any claim, defense, liability, or damages; (ii) are being sought for an improper purpose; (iii) do not exist; and (iv) is protected from disclosure by the absolute work product doctrine to the extent it does exist.

OMSNIC hereby objects to, and moves to quash (or in the alternative modify) the Subpoena on the grounds that it: (1) seeks information that is absolutely protected from disclosure by the work product doctrine; and (2) imposes a manifestly oppressive and undue burden on

OMSNIC, a nonparty to the captioned action, of designating a witness, preparing the witness for deposition, presenting the witness for deposition, and providing counsel to defend the witness at a deposition regarding irrelevant, prejudicial, collateral, nonexistent, and privileged matters.

OMSNIC also objects to, and moves to quash, the Subpoena on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of discovery permitted by Fed. R. Civ. P. 26, since the information sought: (a) is not relevant to any claim or defense in the action, to the issue of liability, or to the issue of damages; (b) is being sought for the improper purpose (as Plaintiff's counsel confirmed) of making improper, inflammatory, unduly prejudicial, and wholly collateral arguments to the jury to the effect that the Defendant Jared E. Dye, DMD ("Dr. Dye") should be punished because he purportedly tried in his deposition testimony to "blame the victim" (which is untrue as well as irrelevant); (c) such information, even if it existed, would not be admissible under Fed. R. Evid. 403 because the danger of undue prejudice, and the danger of wasting time on collateral issues, greatly outweigh its (nonexistent) probative value; and (d) OMSNIC has already produced all the unprivileged information in its possession, custody, or control, by producing its 352-page Claim file (from which it made fourteen redactions of privileged information as described on a privilege log provided to Plaintiff).

OMSNIC also submits that the deposition would be a waste of time and resources, as the information Plaintiff seeks does not exist, since: (i) the former OMSNIC Senior Claims Analyst, Justina M. De Grado, JD, who worked on the matter at the time of the irrelevant matters into which Plaintiff seeks to inquire is no longer with the company; and (ii) no one currently at the company has any contemporaneous personal knowledge regarding the information Plaintiff seeks; (iii) OMSNIC has already provided all the unprivileged information in its possession, custody, or control by producing its 352-page Claim file for the matter to Plaintiff (with a few redactions for privilege).

Moreover, OMSNIC has confirmed, in the Declaration of Kimberly D. Gensler in support of this Motion to Quash, the sole piece of information Plaintiff claims to wish to obtain by means

of the deposition: *viz.*, that it does not have any record of any conversation with Dr. Dye before November 2, 2021 in which he asserted that the Plaintiff abruptly moved her head during the surgical procedure. Thus, even if, *arguendo*, the Court were to deem this single piece of information somehow relevant, the deposition would still be unnecessary, as Plaintiff already has it in the form of the Declaration. If the Court did deem this information appropriate for discovery, however, it could and should modify the Subpoena into a narrowly circumscribed interrogatory or request for admission, instead of requiring an oppressive, wasteful, and unnecessary oral deposition (and OMSNIC would respectfully request such a modification in the alternative).

While OMSNIC's counsel has met and conferred with Plaintiff's counsel in an effort to explain why the Subpoena is objectionable and to secure Plaintiff's agreement to withdraw it voluntarily, Plaintiff did not agree to do so. Therefore, for all the reasons set forth in this Motion, OMSNIC respectfully requests that this Honorable Court quash the (or, in the alternative, modify) subpoena and rule that OMSNIC is not required to appear and provide any deposition testimony.

## II. BACKGROUND

The Raba Action concerns a dispute regarding: (1) whether nonparty OMSNIC's Insured, Dr. Dye is liable for injuries sustained by Plaintiff when Dr. Dye cut her lip with a surgical tool during a dental surgical procedure in which she was anaesthetized; and (2) if so, the amount of damages that will fairly compensate Plaintiff for those injuries. Nonparty OMSNIC does not have any current employees with contemporaneous knowledge, or any unprivileged documentation that it has not already provided to Plaintiff, of any facts with any bearing whatsoever on either of those issues.

OMSNIC has already produced to Plaintiff all unprivileged documentation in OMSNIC's possession, custody, or control regarding this matter on November 16, 2022, when it provided Plaintiff with a copy of the entire 352-page Claim file for the matter (from which only fourteen redactions were made based upon assertions of privilege reflected on a privileged log provided to Plaintiff the same day). (Johnson Dec., par. 4, Ex. B; Gensler Dec., par. 13.)

On March 1, 2023, after learning that Plaintiff wished to take a Rule 30(b)(6) deposition of OMSNIC, counsel for OMSNIC contacted Plaintiff's counsel: (i) to advise that OMSNIC would not agree voluntarily to appear for a Rule 30(b)(6) deposition because such a deposition would be objectionable for multiple reasons (including those raised in this Motion); and (ii) inquire of Plaintiff's counsel why he wished to take OMSNIC's deposition, what information he was seeking, and whether he might be able to obtain such information by some less burdensome means, like a stipulation or declaration.

During that conversation, Plaintiff's counsel said that the only information he wished to obtain from OMSNIC was confirmation that Dr. Dye never advised OMSNIC, in any conversation prior to the filing of the lawsuit, that "Plaintiff abruptly moved her head during the surgical procedure." When OMSNIC's counsel asked Plaintiff's counsel why he needed that information, he said he thought the jury would find it interesting that Dr. Dye, instead of taking responsibility for causing Plaintiff's injuries, was now trying to "blame the victim" by telling a new story in his deposition that Plaintiff abruptly moved her head, a story that he never told anyone else, including OMSNIC.

While Plaintiff's counsel did not explain how this had any bearing on liability or damages, he spoke very animatedly and seemed extremely excited at the prospect of making such an argument to the jury, obviously for the improper purpose of inflaming them against Dr. Dye unfairly, apparently with the expectation that such an inflammatory argument is his ticket to an inflated verdict inconsistent with his client's claimed injuries.

Plaintiff's counsel further agreed that he would agree to accept a stipulation to that effect in lieu of taking OMSNIC's deposition. OMSNIC's counsel stated that he could not guarantee that the parties would agree to a stipulation but agreed that OMSNIC would consider it.

Subsequently, on March 2, 2023, Plaintiff's counsel sent OMSNIC's counsel an email stating that he would accept the following stipulation of the parties in lieu of a Rule 30(b)(6) deposition:

> "The parties stipulate that following the surgery on December 26, 2019, the Defendant spoke to representatives associated with his clinic who were investigating the Plaintiff's injury from the surgery. The investigators have reviewed their files, and they have no documentation from the date of the surgery on December 26, 2019, to November 15, 2021, that reflects Dr. Dye advising them that the Plaintiff abruptly moved her head during the surgical procedure."

(Johnson Dec., par. 9, ex. C.)

While the above statement is accurate, and OMSNIC worked diligently to confirm the accuracy of the statement and secure a stipulation of the parties to that effect, it was ultimately not able to secure such a stipulation before Plaintiff lost patience and served the Subpoena on OMSNIC.

In the Subpoena, Plaintiff seeks to depose the person OMSNIC designates as the person most knowledgeable regarding the following matters:

(1) The conversation(s) Defendant Dr. Jared E. Dye had with individuals from OMS National Insurance Company regarding the surgery.

(2) The conversation(s) Defendant Dr. Jared E. Dye had with individuals from OMS National Insurance Company regarding the cause of Plaintiff Barbara Raba's injuries during the surgery.

(3) The conversation(s) Defendant Dr. Jared E. Dye had with individuals from OMS National Insurance Company regarding OMS's investigation into the surgery.

(4) The conversation(s) Defendant Dr. Jared E. Dye had with individuals from OMS National Insurance Company wherein Dr. Dye advised the representative of OMS that Plaintiff Barbara Raba moved her head during the surgery.

(Johnson Dec., par. 1, ex. A.)

There is no one at OMSNIC with any personal knowledge of such matters. To the contrary, as documented in the Declarations of Richard R. Johnson ("Johnson Dec.") and Kimberly D. Gensler ("Gensler Dec.") filed concurrently herewith:

(1) OMSNIC Senior Claims Analyst, Justina M. De Grado, JD, the claims examiner who handled this matter and had knowledge about this matter during the relevant

period prior to Plaintiff's November 2, 2021 Demand that threatened this lawsuit is no longer employed by OMSNIC (Gensler Dec., par. 6);

(2) No other current OMSNIC employee has any contemporaneous personal knowledge regarding these matters or any unprivileged information beyond what is contained in the Claim file (unprivileged portions of which have been produced) (id., par. 7);

(3) OMSNIC already produced to Plaintiff all unprivileged documentation in OMSNIC's possession, custody, or control regarding this matter on November 16, 2022, when it provided Plaintiff with a copy of the entire 352-page Claim file for the matter (from which only fourteen redactions were made based upon assertions of privilege reflected on a privileged log provided to Plaintiff the same day) (id., par. Johnson Dec., par. 3, ex. A); and

(4) OMSNIC has reviewed its files, and has no documentation from the date of the surgery on December 26, 2019, to November 2, 2021, the date on which Plaintiff sent a time-limited Demand to OMSNIC, that reflects Dr. Dye advising OMSNIC that the Plaintiff abruptly moved her head during the surgical procedure (and, while Plaintiff has inquired about conversations up to the filing of the lawsuit on November 15, 2021, OMSNIC does not offer any disclosure or representations as to matters after the work-product doctrine was triggered by Plaintiff's November 2, 2021 Demand)(Gensler Dec., pars. 11, 12).

On March 23, 2023, OMSNIC's counsel sent Plaintiff's counsel an email advising that OMSNIC objected to the Subpoena and would be filing a Motion to Quash if Plaintiff did not withdraw it, stating (inter alia):

> OMSNIC objects to your deposition notice and subpoena, including (without limitation) on the grounds set forth below, and intends to make a motion next week to quash the notice and subpoena if you do not agree to withdraw them.
>
> While we do not believe that OMSNIC has any meet-and-confer obligation in advance of bringing the motion, and while we do not believe any compromise short of withdrawing the notice and subpoena would be possible (as OMSNIC believes the subpoena and deposition notice are entirely improper and will not voluntarily appear for any deposition in the captioned matter absent a Court order), we nevertheless take this opportunity, as a courtesy, to set forth the basis of OMSNIC's objections, so as to give you an opportunity to withdraw the improper subpoena and deposition notice voluntarily and so avoid incurring additional fees and costs in briefing and arguing the motion to quash.
>
> The subpoena and deposition notice are improper for the following reasons (without limitation):

(1) they seek information that constitutes protected work product prepared in anticipation of this litigation;

(2) they seek information that is not relevant to any claim or defense in the action, not relevant to the issue of liability, not relevant to the issue of damages, and not reasonably calculated to lead to the discovery of admissible evidence;

(3) they seek information for the purpose (as you yourself confirmed to me in our telephone conversation earlier this month) of making improper, inflammatory, and unduly prejudicial, arguments to the jury to the effect that Dr. Dye should be punished because he purportedly tried in his deposition testimony to "blame the victim" (which is untrue as well as irrelevant);

(4) therefore, the danger of undue prejudice, and the danger of wasting time on collateral issues, greatly outweighs the (nonexistent) probative value of the information sought;

(5) the former OMSNIC claims examiner who worked on the matter at the time of the irrelevant matters you seek to inquire into is no longer with the company, and no one currently at the company has any contemporaneous personal knowledge of the information you seek; and

(6) therefore, the burden on OMSNIC, a non-party to the captioned action, is manifestly undue and oppressive.

(Johnson Dec., par. 11, ex. D.)

Later that same day (March 23, 2023), Plaintiff's counsel responded to the email from OMSNIC's counsel with an email in which he made various inaccurate recitations of the record and misstatements of law and baselessly threatened to seek sanctions. (Id., par. 12, ex. E.) OMSNIC's counsel later rebutted Plaintiff's counsel's inaccurate recitations of the record in a letter dated March 27, 2023, but received no reply. (Id., par. 13, ex. F.) OMSNIC now brings this Motion to Quash (or, in the alternative, to Modify) because it was unable to secure Plaintiff's agreement to withdraw the Subpoena voluntarily.

## III. ARGUMENT

### A. Standards on a Motion to Quash

Pursuant to the mandatory provisions of subsection (d)(3)(A) of Rule 45, this Court, as the Court in the District in which compliance with the Subpoena is required must, on timely Motion, quash or modify the Subpoena if, as in this case, it "requires disclosing privileged or protected material and no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(3)-(4).

In this case, the instant Motion to compel is timely because it is filed on March 31, 2023, within fourteen days of service and six days before the Subpoena's return date of April 6, 2023. *See*, *e.g.*, *Estate of Ungar v. Palestinian Authority*, 451 F.Supp.2d 607, 610 (2006) (to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena), *citing Sony Music Entertainment. Inc.*, 326 F.Supp.2d 556, 561 (S.D.N.Y.2004); *In re Welling*, 40 F.Supp.2d 491, 491 (S.D.N.Y.1999); *cf. Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir.1975) (permitting motion to quash one day after return date of subpoena where there was no evidence of prejudice to the other side).

Moreover, as demonstrated below, the Subpoena (i) requires disclosing privileged or protected material and no exception or waiver applies (specifically, absolute opinion work product, which is absolutely protected from disclosure, such that no waiver could possibly apply); and (ii) subjects nonparty OMSNIC to undue burden within the meaning of Rule 45 as interpreted by Courts applying the same.

Therefore, to the extent this Court agrees with OMSNIC's above objections, then the mandatory Rule 45(d)(3)(A) requires that this Court grant the Motion and quash the Subpoena, and OMSNIC respectfully requests that it do so.

### B. The Subpoena Seeks Absolutely Protected Opinion Work Product

Federal law applies in a diversity case where a party asserts the work product doctrine. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *MSTG, Inc. v. AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 221771, at *2 (N.D. Ill. Jan. 20, 2011). The federal rules provide that "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation for trial by or for another party or its representative (including the other

party's attorney, consultant, surety, indemnitor, insurer, or agent) ." Fed. R. Civ. P. 26(b)(3)(A); see also, *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010) ("[T]the work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts.").

Federal courts distinguish between documents produced in the ordinary course of business and in anticipation of litigation. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983) (distinguishing between precautionary documents "developed in the ordinary course of business" for the "remote prospect of litigation" and documents prepared because "some articulable claim, likely to lead to litigation, [has] arisen"); *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767-68 (7th Cir. 2006) ("The work-product doctrine shields materials that are prepared in anticipation of litigation from the opposing party, on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy."); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir. 1987) ("the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation") (citing 8C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (1970)); see also 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (4th ed. 2010) ("The focus is on whether specific materials were prepared in the ordinary course of business, or were principally prompted by the prospect of litigation.").

A document is produced in anticipation of litigation if there is a threat of an adversary proceeding and the document was produced after that threat became palpable. *Helt v. Metro. Dist. Comm'n*, 113 F.R.D. 7, 12 (D.Conn.1986) ("To qualify, the documents must have been prepared 'any time after initiation of the proceeding or such earlier time as the party who normally would initiate the proceeding had tentatively formulated a claim, demand or charge.'" [*quoting United*

*States v. AT & T*, 86 F.R.D. 603, 627 {D.D.C.1979}]). The threat of litigation must be a specific threat. *See Resident Advisory Bd. v. Rizzo*, 97 F.R.D. 749, 754 (E.D.Pa.1983) (reasoning that the work product doctrine "is not applicable unless some specific litigation is fairly foreseeable at the time the work product is prepared."); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 143 (D.Del.1982) ("litigation must be at least a real possibility at the time of preparation or, in other words, the documents must be prepared with an eye to some specific litigation."), *citing In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir.1979))); *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir. 1970) ("Where an attorney personally prepares a memorandum of an interview of a witness with an eye toward litigation[,] such memorandum qualifies as work product even though the lawyer functioned primarily as an investigator."); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir.1996) (work-product protection applies to attorney-led investigations when the documents at issue "can fairly be said to have been prepared or obtained because of the prospect of litigation.").

There are two kinds of attorney work product: ordinary and opinion work product. *Baker*, 209 F.3d at 1054. "Ordinary work product includes raw factual information." *Id.*, *citing Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n. 4 (8th Cir.1998). "Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories." *Id.*, *citing Gundacker*, 151 F.3d at 848 n. 5). "Ordinary work product is not discoverable unless the party seeking the discovery has a substantial need for the materials" and "cannot obtain the substantial equivalent" of the requested discovery. *Id.* (citing Fed. R. Civ. P. 26(b)(3)). "[O]pinion work product enjoys almost absolute immunity...." *Id.*

In this case, arguably the entirety of OMSNIC's Claims file, but at the very least all portions of the Claims file prepared after Plaintiff's counsel sent OMSNIC a time-limited Demand on behalf of Plaintiff on November 2, 2021 (and any conversations recorded or reflected therein), were prepared in anticipation of litigation and therefore protected from disclosure by the work-product doctrine.

OMSNIC demonstrates that such materials are protected by the work-product doctrine by submitting in support of this Motion the declaration of Kimberly Gensler, who states (in pertinent part) that: (1) she is "Director of OMSNIC Claims" for OMSNIC (specifically, OMS National Insurance Company, RRG Professional Liability Insurance for Oral & Maxillofacial Surgeons), and in that capacity supervises the handling of Plaintiff's claim and the defense of OMSNIC's Insured, Defendant Jared E. Dye in the captioned matter; (2) she has reviewed the Claim file in the Raba matter; (2) the Claim file contains (among other things) a November 2, 2021 demand letter from Plaintiff's counsel, threatening litigation; and (3) all items in the Claim file created on or after November 2, 2021 were prepared in anticipation of litigation, and record or reflect the opinions and mental impressions of OMSNIC, counsel, and others regarding litigation with Plaintiff. (Gensler Declaration, Pars. 3-5, 10.)

While Plaintiff has taken the position that the protections of the work-product doctrine did not attach until the commencement of the Raba Action on November 15, 2021, that position is baseless and contrary to the law. *Trustees of Chicago Regional Council of Carpenters Pension v. Drive Construction, Inc.*, No. 1:19-cv-2965, 2022 WL 2341290, at *7 (N.D. Ill. June 29, 2022); *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988) ("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.") There is simply no doubt that OMSNIC's anticipation of litigation was actual, palpable, and reasonable, at the very least by November 2, 2021, when OMSNIC received the time-limited Demand.[1]

[1] This timing discrepancy makes Plaintiff's proposed stipulation overly broad, as it asks for OMSNIC to comment on records of conversations (if any) between November 2, 2021 and November 15, 2021, which (if they exist) would be subject to the absolute work-product protection. Therefore, OMSNIC, which does not wish to waive any applicable protection from disclosure, declines to comment on the content of its files, and its conversations if any, after November 2, 2021. However, resolving this discrepancy, OMSNIC (which was not able to secure the agreement of the parties to Plaintiff's proposed stipulation as phrased) would be willing to declare, and has declared in the Declaration of Kimberly D. Gensler, that OMSNIC "no documentation from the date of the surgery on December 26, 2019, to November 2, 2021, that reflects Dr. Dye advising them that the Plaintiff abruptly moved her head during the surgical procedure." (Gensler Dec., Par. 11.)

Indeed, OMSNIC is being very conservative in selecting that date at the cutoff, as the Claim file actually reveals (as Ms. Gensler notes in Declaration at Par. 8) that Plaintiff had retained counsel well over a year prior to sending the November 2, 2021 Demand, that Plaintiff's counsel dealt regularly with OMSNIC regarding the claim, and that he had routinely been difficult, uncooperative, argumentative, obstreperous, and adversarial since his involvement.

Moreover, Plaintiff's anticipated argument that OMSNIC's work product should be discoverable because it purportedly merely reflects an investigation of facts conducted in the regular course of business, that argument is also without basis and contrary to law because the redacted post-November 2, 2021 entries in the Claim file (and any conversations recorded or reflected therein) contain OMSNIC's and counsel's and Defendants opinions and impressions (which are absolute work product and, as such, absolutely protected from disclosure). (See, Gensler Declaration, Par. 10). Moreover, any fact investigation by OMSNIC was entirely dependent on the cooperation of Plaintiff, which was never forthcoming, as Plaintiff's counsel refused to provide a signed medical release—all of which makes his claim to be relying on OMSNIC to investigate his client's claim specious. (Gensler Dec., Par 8.)

(If, however, the Court were to conclude, both that the conversations into which Plaintiff is inquiring is only ordinary work product [as opposed to absolutely work product] and that Plaintiff had made the requisite showing of need for such information, then that information could be provided in writing, rather than through oral deposition, and the Subpoena [if not quashed] should be modified accordingly.)

**C. <u>The Subpoena Imposes An Oppressive Undue Burden on OMSNIC</u>**

"The management of discovery is committed to the sound discretion of the trial court." *In re Missouri Dep't of Natural Res.*, 105 F.3d 434, 435 (8th Cir. 1997). Rule 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Rule 26(b)(1) also "vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit." *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 360 (8th Cir. 2003); see also,

*Stanley v. Hall*, Case No. Civ- 05-5104-KES, 2007 WL 9773474 (D. S. Dak. 2007) (quashing third party subpoena in large part because the burden imposed outweighed the probative value of the materials sought); *Rossetto v. Past Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir.2000) (It is one thing to subject parties to the trials and tribulations of discovery—rightly regarded as "the bane of modern litigation," but a non-party doesn't usually have a horse in the race.

When a nonparty is subpoenaed, Courts are particularly mindful of Rule 45's undue burden and expense cautions. ); *Robinson v. Stanley*, No. 06 C 5158, 2010 WL 1005736, at *3 (N.D. Ill. Mar. 17, 2010) ("In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that "non-party status" is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue"); Wright & Miller, at § 2459; *see also Alberts v. HCA Inc.*, 405 B.R. 498, 503 (D.D.C.2009) (reasoning that a "blatant abuse of the subpoena power is a common thread running through decisions in which sanctions have been awarded under Rule 45(c)(1),"such as seeking information from a nonparty to use in a different court action). To protect a nonparty from undue burden or expense, the court can modify the subpoena's scope or shift the financial burden of retrieving the information to the requesting party. Wright & Miller, at § 2459. If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena. *See In re Cantrell*, No. 09–mc–0158–cv–w–GAF, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009) (quashing a nonparty document subpoena because a party in the action had the information). If the subpoena seeks the nonparty's confidential information, the court can find that the party serving the subpoena engaged in "overzealous discovery," quash the subpoena, and award costs to the nonparty. *Haworth Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978–79 (Fed.Cir.1993).

In this case, imposes a manifestly oppressive and undue burden on OMSNIC, a nonparty to the captioned action, of designating a witness, preparing the witness for deposition, presenting the witness for deposition, and providing counsel to defend the witness at a deposition regarding irrelevant, prejudicial, collateral, nonexistent, and privileged matters.

**D. The Subpoena Is Not Reasonably Calculated to Lead to Admissible Evidence Relevant to Any Claim, Defense, Liability, or Damages**

While Rule 26 does not permit fishing expeditions like the Plaintiff proposes here, the relevancy standard is broader for discovery than for admissibility of evidence. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.1992) (citations omitted). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.*

The party seeking discovery bears this burden. *See id.* "'Even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.'" *Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2*, 197 F.3d 922, 925 (8th Cir.1999), *quoting Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990).

As demonstrated above, Plaintiff's proposed fishing expedition is beyond the scope of Rule 26 discovery because the information he seeks is: (1) not relevant to any claim, or defense, or liability, or damages; and (2) being sought for the improper purpose of unfairly prejudicing the jury against Dr. Dye on collateral matters.

**E. The Proposed Deposition Would Be a Waste of Time and Resources**

Finally, the deposition Plaintiff proposes taking is unnecessary and would be a complete waste of time and resources, since: (1) OMSNIC has already produced to Plaintiff all of the 352-page Claim file except for fourteen passages that were redacted on the basis of various privileges and protections (including redactions for all documents generated after November 2, 2021); (2) OMSNIC Senior Claims Analyst, Justina M. De Grado, JD, who handled the Raba matter prior to November 2, 2021, had left OMSNIC by November 2, 2021, and is no longer with the company; (3) no one currently with OMSNIC has any personal knowledge of any conversations with Dr. Dye before the November 2, 2021 work-product cutoff; and (4) OMSNIC has already provided a declaration confirming the sole piece of information Plaintiff claims to wish to obtain by means of

the deposition: *viz.*, that OMSNIC does not have any record of any conversation with Dr. Dye before November 2021 in which he asserted that the Plaintiff abruptly moved her head during the surgical procedure.

Thus, even if, *arguendo*, the Court were to deem this single piece of information somehow relevant, the deposition would still be unnecessary, as Plaintiff already has it in the form of the Declaration. If the Court did deem this information appropriate for discovery, however, it could and should modify the Subpoena into a narrowly circumscribed interrogatory or request for admission, instead of requiring an oppressive, wasteful, and unnecessary oral deposition (and OMSNIC would respectfully request such a modification in the alternative).

## IV. CONCLUSION

For the foregoing reasons, OMSNIC respectfully requests that this Honorable Court grant OMSNIC's Motion and quash the Subpoena (or, in the alternative, modify it so that it does not require a burdensome and unnecessary oral deposition).

Dated: March 31, 2023

Respectfully Submitted,

By: /s/ Daniel M. Pammer

Daniel M. Pammer
CLYDE & CO US LLP
55 W. Monroe Street, Suite 3000
Chicago, Illinois 60603
Tel: (312) 635-7000
Fax: (312) 635-6950
daniel.pammer@clydeco.us

Richard Johnson (*pro hac to be filed)*
CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Tel: (213) 358-7600
Fax: (213) 358-7650
Richard.johnson@clydeco.us

*Attorneys for OMS National Insurance Company*